RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0030p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DARYL LYNN HIGDON,

　　　　　　　*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

　　　　　　　*Respondent-Appellee.*

No. 17-5027

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
Nos. 2:12-cr-00104-1; 2:16-cv-00246—Robert Leon Jordan, District Judge.

Argued:  December 7, 2017

Decided and Filed:  February 13, 2018

Before:  GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.  **ON BRIEF:**  Rosana E. Brown, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

KETHLEDGE, Circuit Judge.  Daryl Higdon was sentenced as an armed career criminal based in part on a North Carolina conviction for discharging a firearm into an occupied structure.

The question here is whether that offense—which requires an application of force to an occupied structure, but not to the occupants themselves—nonetheless counts as an offense that involves the use "of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). We hold it does not and reverse the district court's decision to the contrary.

Higdon pled guilty in 2012 to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court determined that Higdon was subject to a 15-year mandatory-minimum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), based in part on Higdon's 1984 conviction for discharging a firearm into an occupied structure in violation of N.C. Gen. Stat. § 14-34.1 (1981). The court thus sentenced Higdon to 15 years' imprisonment. Higdon did not appeal. About two years later, however, the Supreme Court invalidated the so-called residual clause of the ACCA. *See Johnson v. United States*, 135 S. Ct. 2551 (2015). Higdon then moved to set aside his sentence under 28 U.S.C. § 2255, arguing that the North Carolina offense for which he was convicted was not a "violent felony" under the remaining provisions of the ACCA. The district court denied the motion, holding that the North Carolina offense did "involve the use of force against the person of another[.]" Op. at 6. We review that decision de novo. *Braden v. United States*, 817 F.3d 926, 929-30 (6th Cir. 2016).

An offense counts as a "violent felony" under the ACCA if (among other things) it "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" 18 U.S.C. § 924(e)(2)(B)(i). Here, the relevant North Carolina offense is defined as follows:

> Any person who willfully or wantonly discharges or attempts to discharge:
>
> > (1) Any barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second; or
> >
> > (2) A firearm
>
> into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class H felony.

N.C. Gen. Stat. § 14-34.1 (1981). As interpreted by the North Carolina courts, "[t]he elements of this offense are (1) willfully and wantonly discharging (2) a firearm (3) into property (4) while it

is occupied." *State v. Rambert*, 459 S.E.2d 510, 512 (N.C. 1995). As a judicial gloss, the North Carolina courts have added a fifth element, namely that the defendant know or have "reasonable grounds to believe" that the property (which we refer to here as a "structure") might be occupied. *State v. James*, 466 S.E.2d 710, 715 (N.C. 1996).

Here, the district court did not hold, and the government has not presented any developed argument, that these elements involve the "attempted" or "threatened" use of physical force against the person of another. Indeed the government all but disavowed any such theory at oral argument. Thus the question here is simply whether these elements, taken separately or together, require the "use . . . of physical force against the person of another[.]" Plainly they do not: the North Carolina offense requires the use of force (in the form of discharging a firearm) against a structure, not "against the person of another." The projectile can miss the structure's occupants altogether—with no physical force applied to the person of anyone—and yet the shooting can satisfy all the elements of the North Carolina offense. Thus, discharging a firearm into an occupied structure in violation of N.C. Gen. Stat. § 14-34.1 is not a "violent felony" under the ACCA, at least on a "use" theory. *Accord United States v. Parral-Dominguez*, 794 F.3d 440, 445 (4th Cir. 2015) (same).

In arguing the contrary, the government confuses the *mens rea* requirements of § 924(e)(2)(B)(i) with that subsection's more tangible requirements. The subsection's definition of "violent felony" includes four requirements, to wit: (1) conduct giving rise to force (*e.g.*, pulling a trigger on a gun); (2) certain consequences from that conduct (*i.e.*, the application of "physical force against the person of another"); and two types of *mens rea*, namely that (3) the conduct giving rise to the force be "volitional" rather than accidental, *see Voisine v. United States*, 136 S. Ct. 2272, 2278-79 (2016), and that (4) the defendant be at least reckless as to the consequences of that conduct. *See United States v. Verwiebe*, 874 F.3d 258, 264 (6th Cir. 2017); *but see United States v. Harper*, 875 F.3d 329, 330-33 (6th Cir. 2017) (interpreting the relevant text to mean that the defendant must act intentionally or knowingly as to those consequences). Here, the government argues throughout its brief (and, respectfully, the district court held) that the North Carolina offense meets the second requirement (*i.e.*, the consequences requirement) simply because it meets the fourth one (*i.e.*, the necessary *mens rea* as to those consequences).

For example, as the district court put it, "'[e]ven if no one was actually struck, the defendant fired a bullet toward a location where he knew or believed another person to be.'"  Op. at 8 (quoting *Parral-Dominguez*, 794 F.3d at 452 (Wilkinson, J., dissenting)).  That description might well satisfy the requirement that the defendant act recklessly, but that requirement is separate from the one that the force be used "*against the person of another*."  18 U.S.C. § 924(e)(2)(B)(i) (emphasis added).  And as to that requirement it matters very much whether the person was "actually struck."  (Indeed, by the government's logic, a defendant who intentionally fired a gun at someone would be guilty of murder even if he missed.)  Nor, for similar reasons, does the plate-throwing hypothetical from *Voisine* do the government any good here; for there, unlike here, some of the shards actually struck the victim.  136 S. Ct. at 2279.

The government also seems implicitly to adopt a meaning of "against" that is implausible in the context of § 924(e)(2)(B)(i).  By way of background, the government repeatedly asserts that a defendant uses force against the person of another if the defendant merely shoots in the person's "direction"—even without hitting him.  In so asserting, the government seems to use "against" in the sense of "[i]n hostile opposition or resistance to[,]" which is indeed one of the word's definitions.  *American Heritage Dictionary* 32 (3d ed. 1992).  Yet the usage example for that definition is "struggle against fate," *id*., which illustrates that this meaning is too abstract for a phrase as concrete as "physical force against the person of another."  Instead a better fit comes with an alternative definition:  "[s]o as to come into forcible contact with[,]" for which the example is "dashing waves against the shore."  *Id.*  That definition involves physical contact with the (physical) object of the preposition, which makes the definition the more natural one for "against" as used in "physical force against the person of another."  Indeed the very point of including the words "the person of" in the statutory text—as opposed to saying simply, "force against another"—is to emphasize that the force must be applied to the victim's "person."  The offense here lacked that requirement, and thus Higdon lacks the predicate convictions to be sentenced as an armed career criminal.

The district court's January 3, 2017 judgment is reversed, and the case remanded for proceedings consistent with this opinion.